UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRMA GARZA, | No. 2:15-cv-214-KJN |
| Plaintiff, | |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").[1] In her motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from January 27, 2012, the date on which plaintiff filed her SSI application, through the date of the final administrative decision. (ECF No. 15.) The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment. (ECF No. 19.) No optional reply brief was filed.

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 8, 10.)

1

For the reasons discussed below, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the final decision of the Commissioner.

I.   BACKGROUND

Plaintiff was born on February 1, 1961; has an eighth grade education; is able to communicate in English; and previously worked as a laundry laborer. (Administrative Transcript ("AT") 32, 59, 132, 150, 152.)[2] On January 27, 2012, plaintiff applied for SSI, alleging that her disability began on April 7, 2011. (AT 71, 132.)[3] Plaintiff alleged that she was disabled primarily due to hand problems, bipolar disorder, arthritis, and tendonitis. (AT 151.) After plaintiff's application was denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on May 23, 2013, and at which plaintiff, represented by an attorney, and a vocational expert ("VE") testified. (AT 28-62.) In a decision dated July 23, 2013, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from January 27, 2012, the date that plaintiff's SSI application was filed, through the date of the ALJ's decision. (AT 15-23.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on December 8, 2014. (AT 1-4.) Plaintiff then filed this action in federal district court on January 26, 2015, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II.  ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ improperly evaluated the medical opinion evidence in concluding that plaintiff had no severe impairment or combination of impairments at step two of the sequential disability evaluation process; and (2) whether the ALJ erred in not further developing the record regarding plaintiff's ankle injury.

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] Regardless of the alleged disability onset date, SSI is not payable prior to the month following the month in which the application was filed. 20 C.F.R. § 416.335.

III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV. DISCUSSION

    A. Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to SSI pursuant to the Commissioner's standard five-step analytical framework.[4] At the first step, the ALJ determined that plaintiff had not

---

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past relevant work? If so, the

3

engaged in substantial gainful activity since January 27, 2012, the date that plaintiff's SSI application was filed. (AT 17.) However, at step two, the ALJ found that plaintiff did not have an impairment or combination of impairments that significantly limited (or was expected to significantly limit) plaintiff's ability to perform basic work-related activities for 12 consecutive months; and that therefore, plaintiff did not have a severe impairment or combination of impairments. (Id.) Consequently, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from January 27, 2012, the date that plaintiff's SSI application was filed, through the date of the ALJ's decision. (AT 22.)

   B.  Plaintiff's Substantive Challenges to the Commissioner's Determinations

    1. *Whether the ALJ improperly evaluated the medical opinion evidence in concluding that plaintiff had no severe impairment or combination of impairments at step two of the sequential disability evaluation process[5]*

Under the Commissioner's regulations, an impairment or combination of impairments is deemed to be severe at step two if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a). As the Ninth Circuit Court of Appeals has explained, "the step-two inquiry is a de minimis screening device to dispose of groundless claims. An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an

---

  claimant is not disabled. If not, proceed to step five.

  Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

  The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

[5] Plaintiff actually raised the ALJ's evaluation of the medical opinion evidence and the ALJ's non-severity finding at step two as separate issues. However, to review the propriety of the ALJ's step two finding, the court must necessarily also review the ALJ's evaluation of the medical opinion evidence. As such, the court considers both issues together.

individual's ability to work." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal citations and quotation marks omitted).

In evaluating medical opinion evidence at step two, as well as at other steps in the sequential disability evaluation process, the weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[6] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

---

[6] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527.

In this case, the ALJ properly found at step two that plaintiff did not have a severe physical impairment.

As the ALJ observed, although plaintiff has alleged pain in multiple areas, including the neck, lower back, shoulders, arms, elbows, wrists, and knees, physical examinations by her treating providers have rendered little objective findings other than tenderness, no specific physical limitations were assessed, and she received primarily routine and conservative treatment with medication. (AT 20-22.)

Nevertheless, out of abundance of caution, plaintiff also underwent a consultative evaluation by board certified orthopedist, Dr. David Osborne. (AT 331-35.) Dr. Osborne examined plaintiff on August 30, 2012, and noted her complaints of lower back, shoulder, arm, hand, and right knee pain. (AT 331-32.)[7] However, Dr. Osborne specifically noted that he did not find plaintiff credible, because, in his view, she exaggerated her symptoms. (AT 331.) He stated that plaintiff was able to get on and off the examination table without assistance, and sat on the examination table in apparent comfort throughout the interview and evaluation process, without being in acute or chronic distress. (AT 333.) Plaintiff had no muscle atrophy, normal posture, and no difficulty in rising on the toes and heels, although she ambulated around the room, without an assistive device, "with a somewhat exaggerated limp." (Id.) A physical examination of plaintiff's entire spine and extremities (including the shoulders, elbows, wrists, hands, knees, and feet) was unremarkable, with normal functioning and range of motion, and only some mild tenderness in the lower lumbar area. (AT 334-35.) Furthermore, plaintiff's motor strength, sensation, and reflexes were all normal. (Id.) Dr. Osborne opined that plaintiff did not have a medically determinable impairment that would limit her functioning. (AT 335.) Because

---

[7] The court notes that Dr. Osborne was apparently not provided with plaintiff's prior medical records. The regulations require that a consultative examiner be given any necessary background information about the plaintiff's condition. 20 C.F.R. § 404.1517. However, in this case, failure to provide Dr. Osborne with the prior medical records was harmless, because the records do not contain any significant findings or diagnostic studies concerning plaintiff's alleged physical impairments. As such, it is not plausible that Dr. Osborne would have rendered a different opinion had he reviewed such prior records. The issue of medical records that post-date Dr. Osborne's opinion is addressed separately below.

Dr. Osborne personally examined plaintiff and made independent clinical findings, his opinion constitutes substantial evidence on which the ALJ was entitled to rely.

Additionally, as the ALJ noted, Dr. Osborne's opinion is consistent with the opinion of the non-examining state agency physician, who reviewed plaintiff's records and opined that plaintiff's alleged physical impairments were non-severe. (AT 22, 78.)

Finally, plaintiff herself at times suggested that her alleged physical limitations were not severe. Notably, during her mental consultative evaluation on August 29, 2012, the day prior to her evaluation by Dr. Osborne, plaintiff actually *denied any physical limitations attributable to medical conditions*, and told the psychologist that she walked or used the public transportation system to get around, was independent for basic self-grooming, completed light household chores, and prepared simple meals. (AT 19, 323.)

Consequently, substantial evidence supports the ALJ's determination that plaintiff did not have a severe physical impairment.

The ALJ also reasonably found at step two that plaintiff did not have a severe mental impairment.

As part of making that determination, the ALJ legitimately discounted the opinion of one of plaintiff's treating providers at the Genesis mental health program, marriage and family therapist intern Marji Miller. (AT 19-20.) On April 5, 2013, Ms. Miller completed a two-page mental assessment form, indicating, *inter alia*, that plaintiff would have a poor ability to attend, concentrate, and work without supervision, and that plaintiff "would be very limited in the type of work she is able to perform. She would require a repetitive job, which included non-threatening supervision, and very little contact with customers or co-workers." (AT 346-47.) Thereafter, on April 12, 2013, Ms. Miller submitted a letter, noting diagnoses of post-traumatic stress disorder and bipolar disorder, as well as treatment with psychotropic medications. (AT 348.) The letter continued as follows:

> [Plaintiff] also reports being highly anxious in any social situation, she experiences flashbacks and is hypervigilant, all symptoms of Post Traumatic Stress Disorder. Her ability to concentrate is highly impaired, and she reports sleeping for days at a time. She also reports a generally depressed mood, decreased energy and the

> inability to concentrate. She also reports hearing voices and has periods of involvement in activities with a high potential for painful consequences, symptoms of Bipolar Disorder. These symptoms would make it very difficult for her to function around people she does not know, or in situations that are unfamiliar. These symptoms impact her ability to learn, to follow instructions and to interact with coworkers and supervisors. These disorders would make it difficult for her to function in a competitive work environment. In my opinion, [plaintiff] is a poor candidate for employment at this time.

(AT 348.)

As an initial matter, the court observes that plaintiff incorrectly argues that the ALJ was required to provide clear and convincing reasons for rejecting Ms. Miller's opinion. Ms. Miller, as a marriage and family therapist intern, is not an acceptable medical source for purposes of the regulations, and thus the ALJ was only required to provide reasons germane to that opinion. See 20 C.F.R. § 416.913(a); Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Furthermore, even if Ms. Miller qualified as an acceptable medical source, her opinion conflicts with the opinion of other mental health professionals in the record, and the ALJ would only be required to provide specific and legitimate, as opposed to clear and convincing reasons, to reject her opinion.

Regardless, even under the clear and convincing reasons standard, the ALJ properly rejected Ms. Miller's conclusory and minimally supported opinion. The ALJ correctly observed that the mental status examinations at Genesis did not support Ms. Miller's extreme limitations. (AT 20.) Indeed, although the treatment notes at times documented plaintiff's subjective complaints of mental symptoms, the mental status examinations were consistently unremarkable, finding that plaintiff was cooperative and had an appropriate affect, normal mood, normal speech, normal thought processes, no hallucinations or delusions, normal memory, and normal judgment, only once noting a disheveled appearance. (AT 341, 342.)

Furthermore, as the ALJ noted, Ms. Miller's April 12, 2013 report that plaintiff heard voices and was highly anxious in any social situation appears inconsistent with the record in several respects. (AT 20.) Notably, less than a month earlier, on March 22, 2013, plaintiff actually denied hearing voices on her medication regimen. (AT 337.) In fact, during a prior mental health examination while incarcerated on December 1, 2011, plaintiff also denied

1  hallucinations, stating that she only heard voices when using drugs.  (AT 18, 22, 212.)  And on
2  August 29, 2012, she told the consultative evaluating psychologist that she last heard voices "a
3  couple of years ago."  (AT 324.)  At the administrative hearing, plaintiff also testified that she
4  generally got along well with her roommates, attended public barbecues, and was active in AA
5  and NA meetings.  (AT 20, 43-44, 46, 48.)

6  Thus, in light of the conclusory nature of Ms. Miller's opinion, and its inconsistency with
7  substantial portions of the record evidence, the ALJ did not err in rejecting that opinion.

8  In declining to find a severe mental impairment, the ALJ reasonably relied on the opinion
9  of consultative clinical psychologist, Dr. Deborah Lacy.  (AT 18-20, 320-27.)  Dr. Lacy reviewed
10 plaintiff's records and personally evaluated plaintiff on August 29, 2012.  (AT 320.)  Plaintiff
11 reported a history of three prison terms and several arrests for domestic violence, sales and
12 transportation of narcotics, and burglary.  (AT 323.)  She also described a history of heavy
13 alcohol use, heroin addiction, and intravenous methamphetamine use until her most recent
14 incarceration, after which she had been sober.  (AT 322-23.)  According to plaintiff, she
15 previously worked in the laundry department at a hotel and got along well with her supervisors
16 and co-workers, but left that job when the hotel moved and she could not secure transportation to
17 the new location.  (AT 322.)  At the time of the evaluation, plaintiff noted that she was still on
18 probation, homeless, and endorsed symptoms of depression, anxiety, decreased concentration,
19 and difficulty falling asleep.  (AT 321, 323.)  However, she reported good relationships with
20 family and friends.  (AT 323.)

21 Upon mental status examination, plaintiff was alert, oriented, clean, appropriately dressed,
22 and adequately groomed; she interacted appropriately with good/fair eye contact and no bizarre
23 behavior; and she had logical, linear, and goal-oriented thinking; normal speech and thought
24 content, with no indicia of delusions or internal stimuli; a restricted and tearful affect at times;
25 average intelligence; at most some mild memory impairment; a normal fund of knowledge; a
26 normal ability to perform simple calculations; normal concentration; intact abstract thinking and
27 ability to differentiate; and intact insight and judgment.  (AT 323-26.)  Dr. Lacy diagnosed
28 plaintiff with a mood disorder, personality disorder, and polysubstance dependence (in reported

full remission), noting that plaintiff's symptom severity is in the mild-to-moderate range. (AT 326.) Dr. Lacy opined that plaintiff was able to perform detailed and complex tasks, as well as simple and repetitive tasks. (AT 327.) She further found that plaintiff was only mildly impaired in her ability to perform work activities on a consistent basis, perform work activities without special or additional supervision, complete a normal workday or work week without interruptions resulting from psychiatric conditions, and relate and interact with coworkers and the public. (Id.) She indicated that plaintiff's ability to deal with the usual stresses encountered in competitive work was moderately impaired. (Id.) Because Dr. Lacy, a mental health specialist, personally evaluated plaintiff and made independent clinical findings, her opinion constituted substantial evidence on which the ALJ was entitled to rely.

The court cannot say that it was unreasonable for the ALJ to interpret Dr. Lacy's opinion as indicating that plaintiff did not have a severe mental impairment at step two. Indeed, Dr. Lacy's mental status examination rendered largely normal findings, and she assessed only mild mental limitations, with the exception of one moderate limitation related to stress. The mere fact that plaintiff has diagnosed mental impairments for which she takes medications does not establish that her impairments are severe. Notably, the ALJ's interpretation of Dr. Lacy's opinion is also consistent with the opinion of the non-examining state agency psychologist, who reviewed plaintiff's records and concluded that plaintiff's mental impairments were not severe. (AT 78.)[8]

However, even assuming, without deciding, that the ALJ technically erred by not finding a severe mental impairment at step two, such error was harmless. See Molina, 674 F.3d at 1111 ("we may not reverse an ALJ's decision on account of an error that is harmless"). The record evidence, when properly weighed, establishes at most mild to moderate mental limitations, and the Ninth Circuit has already held that moderate mental limitations do not even require vocational expert testimony. Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007). As such, had the ALJ

---

[8] Plaintiff's reliance on medical records and low GAF scores dating back to 1992 to establish the alleged severity of her mental impairments is misplaced, because such records significantly pre-date the relevant period (from January 27, 2012 onwards) and also relate to a period during which plaintiff admits she extensively abused alcohol, heroin, and/or methamphetamines.

proceeded past step two, the ALJ could have simply relied on the Grids to deny plaintiff's claim at step five.[9]

In sum, the ALJ rationally concluded that plaintiff did not have a severe impairment or combination of impairments at step two. Even assuming, without deciding, that any technical error exists, it was harmless.

2. *Whether the ALJ erred in not further developing the record regarding plaintiff's ankle injury*

On March 6, 2013, after Dr. Osborne's August 30, 2012 opinion, plaintiff fell and sustained an ankle fracture. A splint was applied, plaintiff was fitted for crutches and prescribed pain medication for two days (with no refills), and she was discharged home that same day. (AT 437-41.) Plaintiff argues that the ALJ should have further developed the record by requesting a supplemental opinion from Dr. Osborne, or another orthopedic specialist, in light of such additional evidence. That argument is unpersuasive.

As the Ninth Circuit Court of Appeals has previously explained, "[t]he ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered ... even when the claimant is represented by counsel.'" Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (citing Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). However, as some courts have persuasively observed, the ALJ "does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning. The standard is one of reasonable good judgment." Hawkins v. Chater, 113 F.3d 1162, 1168 (10th Cir. 1997) (citation omitted).

---

[9] Moreover, in this case, even though the ALJ's written decision never proceeded past step two, the ALJ solicited testimony from the VE that if plaintiff were limited to simple job instructions and tasks, with no public contact and only occasional contact with supervisors, plaintiff would still be able to perform her past work as a laundry laborer and other jobs, such as janitor, agricultural packer, and warehouse worker. (AT 59-60.)

11

Here, the ALJ's decision specifically acknowledged and discussed plaintiff's March 6, 2013 ankle fracture, but legitimately found no evidence that the injury would persist, or result in any functional limitations, for 12 months or longer. (AT 22.) See 42 U.S.C. § 1382c(a)(3)(A) (defining disability as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."). Notably, at the May 23, 2013 hearing, the ALJ left the record open for an additional 30 days to allow plaintiff's attorney to submit additional records related to plaintiff's ankle injury. (AT 52, 61.) However, other than the March 6, 2013 treatment records, no further medical records concerning the ankle injury were submitted to the ALJ, nor were any such records later submitted to the Appeals Council.

The ALJ exercised reasonable good judgment by raising the issue of plaintiff's ankle injury at the hearing and leaving the record open for a specified period of time. Plaintiff and her attorney did not submit additional medical records, nor did they request an extension of time to do so. No further record development was required.

V.  **CONCLUSION**

For the foregoing reasons, the ALJ's decision is free from prejudicial error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 19) is GRANTED.

3. The Commissioner's final decision is AFFIRMED and judgment is entered for the Commissioner.

4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated:  June 14, 2016

_Kendall J. Newman_
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

12